**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 25-cv-08255 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| RIXIE DAVIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' motion to dismiss, [41]. For the reasons explained below, the Court grants the motion in part.

## I. Factual Background[1]

While on parole for another offense, Plaintiff Johnny Taylor was arrested on July 10, 2023, for felony failure to register as a sex offender.[2] [1] ¶¶ 7, 11. In fact, the deadline for him to register had not yet passed; Taylor was (and at all times relevant to this lawsuit, has been) in compliance with his reporting obligations. *Id.* ¶ 10. Because Taylor was on parole at the time of his arrest, Defendant James Herbert, a parole supervisor, charged Taylor with a parole violation. *Id.* ¶ 12. Taylor was originally set for release from his confinement for this parole violation charge on

[1] The Court takes these facts from Plaintiff's complaint, [1], and accepts them as true for purposes of resolving the motion to dismiss. *See Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

[2] Though "parole" and "Mandatory Supervised Release" (MSR) may differ slightly in practice, [47] at 10 n.2, there is little risk of confusion between the terms here. Because Illinois no longer imposes "parole" and instead imposes "MSR," the Court uses the terms interchangeably throughout this order.

August 8, 2023. *Id.* ¶ 13. Despite this, he was charged, arrested, and further confined after Defendant Michael Morris, another parole supervisor, charged him with a second parole violation. *Id.* ¶¶ 13, 14. Although all charges were eventually dismissed, Taylor remained in custody at the Stateville Northern Reception and Classification Center (NRC) from July 12, 2023, to August 24, 2023. *Id.* ¶¶ 14, 15.

Before Taylor's arrest, on June 27, 2023, Defendant Brooke Settle, then Taylor's parole officer, applied for Taylor's early release from parole. *Id.* ¶ 17. Herbert, Settle's supervisor, reviewed and approved this application on July 1, 2023. *Id.* ¶ 18. Similarly, Defendant Jason Garnett, the Chief of Parole, reviewed and approved the application on July 3, 2023. *Id.* ¶ 19. The Prisoner Review Board (PRB) granted the application, and Taylor's early release from parole became effective on July 20, 2023. *Id.* ¶ 20. This order was documented in Taylor's Automated Management System (AMS) file, which was accessible to all Illinois Department of Corrections (IDOC) employees. *Id.* ¶ 21. On July 22, 2023, Defendant Rixie Davis, another parole supervisor, was personally informed of the decision to grant Taylor an early release from parole. *Id.* ¶ 25. Defendant Syntynese Gray, the Records Department Supervisor at Stateville NRC, received the early release order but failed to record and communicate it. *Id.* ¶ 31.

Despite the PRB's order, none of the Defendants took action to inform Taylor that he had been granted early termination; nor did they terminate his parole. *Id.* ¶¶ 22, 25, 26, 27, 28. Defendant Charles Truitt, the Warden at Stateville NRC, did not release Taylor until roughly a month after the early discharge from parole was

granted. *Id.* ¶ 30. Following his release, Taylor asked Settle about the status of his discharge petition; instead of informing him of its status, she told him that she could not submit a new petition for another six months. *Id.* ¶ 36. After Taylor moved to a new apartment on December 1, 2023, he was assigned a new parole agent, Defendant Davina Serrano; when Taylor asked her about the application, she told him that a new discharge petition was "sitting on her supervisor's desk." *Id.* ¶¶ 37, 39. Taylor received the same answer about the status of his discharge petition for the next twelve months. *Id.* ¶ 40. In total, Taylor was subject to parole restrictions for roughly 16 months after his discharge petition was granted. *Id.* ¶ 44.

On July 10, 2024, Taylor filed a different lawsuit in this Court, *Taylor v. Marchetti*, Case No. 24-cv-8581. *Id.* ¶ 16; *see Marchetti* [1].[3] In that case, Plaintiff asserts various constitutional and state law claims arising out of his July 10, 2023 arrest and two subsequent parole violations; two of the defendants named in this suit, Herbert and Morris, are also named in that first suit. *See Marchetti* [1] ¶ 1.

In this case, Plaintiff alleges that, during discovery in *Marchetti*, he learned that his application for early release from parole was granted on July 20, 2023. [1] ¶ 41. Thereafter, he filed this lawsuit on July 18, 2025, [1]. Although he does not allege specific claims against specific defendants, he ostensibly sues under § 1983, claiming violations of his Fourth, Fifth, Eighth, and Fourteenth Amendment rights. *Id.* ¶ 1. Defendants now move to dismiss the complaint under Federal Rule of Civil Procedure

[3] Throughout the course of this order, "*Marchetti* [#]" will refer to the docket in *Taylor v. Marchetti*, and "[#]" will refer to the docket in *Taylor v. Davis*.

12(b)(6), arguing that Taylor has not stated a claim for any constitutional violation. *See* [41].

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.* In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

To state a claim under 42 U.S.C. § 1983, a plaintiff must "allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or the laws of the United States." *Estate of Sims ex rel Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). To determine liability under § 1983, it is "necessary to isolate the precise constitutional violation" with which the defendant is charged, and thus, the "first inquiry in any § 1983 suit . . . is whether

the plaintiff has been deprived of a right secured by the Constitution and laws." *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014) (internal quotations omitted).

## III. Analysis

Defendants move to dismiss the suit for failure to state a claim under Rule 12(b)(6) (or, in the alternative, based upon qualified immunity). The Court considers the viability of each of Taylor's claims, as well as the qualified immunity defense below.

### A. Fourth Amendment Claims

Taylor alleges that the defendants (lumped together) violated his Fourth Amendment rights. Generally, the Fourth Amendment protects "against unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause." U.S. CONST. amend. IV. Although Taylor's allegations remain unclear, he appears to assert two separate, but related, Fourth Amendment claims. First, Taylor appears to allege that his Fourth Amendment rights were violated because he was charged with and incarcerated for parole violations after he was released from parole. Second, Taylor appears to allege that his Fourth Amendment rights were violated because he was subject to parole restrictions even after his release. The Court discusses each issue in turn.

#### 1. Fourth Amendment False Arrest and Detention Claims

For the first issue, Defendants argue that any Fourth Amendment claims are barred by the rule against claim splitting. "Claim splitting draws on and is a subset of the doctrine of res judicata." *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*,

42 F.4th 688, 696 (7th Cir. 2022). Res judicata prohibits parties from raising claims that have been, or could have been, litigated in a prior action resolved with a final judgment on the merits. *Barr v. Bd. of Trustees of W. Ill. Univ.*, 796 F.3d 837, 839 (7th Cir. 2015). In federal court "res judicata has three elements: (1) an identity of parties; (2) a final judgment on the merits; and (3) an identity of the cause of action (as determined by comparing the suit's operative facts)." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). Claim splitting, while related, is less stringent in its requirements. This is because "the bar against claim splitting can be applied before either action reaches a final judgment on the merits." *Rexing Quality Eggs v. Rembrandt Enters., Inc.*, 392 F. Supp. 3d 965, 971 (S.D. Ind. 2019), *aff'd*, 953 F.3d 998 (7th Cir. 2020). Thus, claims are precluded on claim splitting grounds when "there is an identity of the parties and of the causes of action between the two lawsuits." *Scholz v. United States*, 18 F.4th 941, 952 (7th Cir. 2021).

Here, Taylor has sued Defendants Herbert and Morris in this suit and in the prior suit, *Taylor v. Marchetti*. His arguments to the contrary notwithstanding, [47] at 3, it makes no difference that he also named other defendants in both suits. *See Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011) (noting that existence of other parties does not affect identity analysis for parties included in both).

An identity also exists as to the causes of actions in the two suits because "the claims arise out of the same set of operative facts or the same transaction." *Scholz*, 18 F.4th at 952 (cleaned up) (claim splitting applies when claims "are based on the same, or nearly the same factual allegations," even if the legal theories for the claims

differ). In particular, both complaints allege that: Herbert and Morris were employed by the Illinois Department of Corrections as parole supervisors, *Marchetti* [71] ¶ 7; [1] ¶ 6; Herbert falsely charged Taylor with a parole violation on July 11, 2023, *Marchetti* [71] ¶ 36; [1] ¶ 12; Morris falsely charged Taylor with a parole violation on August 8, 2023, *Marchetti* [71] ¶ 46; [1] ¶ 33; these parole violation charges caused Taylor to be wrongfully confined for a crime that he did not commit, *Marchetti* [71] ¶¶ 85, 95; [1] ¶ 29; Herbert and Morris violated Taylor's "Fourth, Fifth, Eighth, and Fourteenth Amendment[]" rights, *Marchetti* [71] ¶ 1; [1] ¶ 1; and, perhaps most critically, Taylor served 16 additional months of parole due at least in part to these false charges, *Marchetti* [71] ¶ 58; [1] ¶ 43.

As it relates to Herbert and Morris, the only operative difference between the two complaints' factual allegations concerns Taylor's early release from parole. In *Marchetti*, Taylor alleged that Herbert's and Morris's actions "extinguished his opportunity for an early release from parole," *Marchetti* [71] ¶ 57, whereas here he alleges that he received early release from parole but nonetheless remained incarcerated for parole violations after receiving such early release, [1] ¶ 42. These facts are sufficiently similar to trigger a dismissal on claim splitting grounds. *See Cooper*, 42 F.4th at 697.

Claim splitting springs from the same principles as *res judicata*; both bar "not only those issues that were actually decided in a prior lawsuit, but also all issues that could have been raised in that action." *Rexing Quality Eggs*, 392 F. Supp. 3d at 971. Taylor alleges here that he did not learn of his early discharge until he received

documentation of it on May 27, 2025, and Herbert confirmed the early discharge in a deposition on June 3, 2025. [1] ¶ 41. This means Taylor had the opportunity to include these facts in his Amended Complaint in *Marchetti*, filed on July 29, 2025, *Marchetti* [71]. Parties may amend in such a fashion when they learn new facts in discovery, provided such amendment is timely and does not prejudice the defendant. *Cf. Feldman v. Am. Mem'l Life Ins.*, 196 F.3d 783, 793 (7th Cir. 1999); *see also* Fed. R. Civ. P. 15(a)(2) (instructing courts that leave to amend "shall be freely given when justice so requires"). Because Taylor had the opportunity to amend his complaint to assert these claims in *Marchetti*, res judicata principles instruct that his failure to do so there bars him from asserting them here. The Court thus dismisses all Fourth Amendment claims asserted by Taylor against Herbert and Morris in this case.

**2. Fourth Amendment Parole Over-Detention Claim**

Taylor next claims a violation of the Fourth Amendment based upon his having "to serve out his remaining Mandatory Supervised Release sentence," [47] at 11; the claim runs against Seventh Circuit precedent requiring such claims to be evaluated through an Eighth Amendment lens. *See Sabo v. Erickson*, 128 F.4th 836, 845–48 (7th Cir. 2025) (evaluating a parolee's claim that he was unlawfully subject to parole past his intended date of release under an Eighth Amendment framework); *Hankins v. Lowe*, 786 F.3d 603, 605–06 (7th Cir. 2015) (same). For that reason, Taylor cannot pursue any Fourth Amendment claims for his parole over-detention.

Further, as Defendants note, Taylor "does not appear to allege any other Fourth Amendment claim committed by Davis, Garnett, Settle, Serrano, Truitt, or

Gray." [41] at 12. He has not alleged that any member of this group of defendants unreasonably searched or seized him; nor does he otherwise allege that conduct on the part of any of these defendants violated a right covered by the Fourth Amendment. Thus, to the extent Taylor seeks to assert any remaining claims under the Fourth Amendment, such claims fail.

**B. Fifth Amendment Claims**

Taylor also alleges that his Fifth Amendment rights were violated by the defendants. Because Taylor is suing state rather than federal officers, however, the "Fifth Amendment's Due Process Clause is a misfit for a § 1983 action because it has not been incorporated against the states." *Economan v. Luttrull*, No. 24-3165, 2026 WL 82958, at *6 (7th Cir. Jan. 12, 2026). Thus, the Court dismisses any claims asserted under the Fifth Amendment.

**C. Eighth Amendment Claims**

Next, Taylor alleges that because he was kept under parole restrictions past the date that he was granted an early release from parole, his Eighth Amendment rights were violated. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII. "Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016). This includes instances where an individual is subject to parole restrictions past when they are entitled to release from parole. *See Sabo*, 128 F.4th at 845–46; *Hankins*, 786 F.3d at 605. Thus, the central Eighth Amendment question is whether Taylor has

plausibly alleged that he was subject to parole restrictions after his release from parole because the defendants were deliberately indifferent. An individual is deliberately indifferent when they are "essentially criminally reckless, that is, ignored a known risk." *Figgs*, 829 F.3d at 903. A state official may be "deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Id.* (internal citations omitted).

*Hankins* is instructive here. In that case, the Seventh Circuit found that the plaintiff, a woman on parole in Illinois for a crime committed in Arkansas, had stated an Eighth Amendment claim against her parole officer when he subjected her to parole restrictions after she had served the term of her parole. 786 F.3d at 605–06. In particular, the officer would not tell the plaintiff when her term of supervised release was scheduled to end and forbade her from asking the Arkansas authorities. *Id.* at 604. The Seventh Circuit there noted that "Lowe must have realized that he had to find out when his parolee's parole would expire [and] . . . A phone call by him to Arkansas would have answered that question." *Id.* at 605–06. Because there was "knowledge of a preventable risk coupled with refusal to do anything however trivial (such as a phone call) to prevent it from materializing," the court found that the officer "was thus guilty of deliberate indifference or its equivalent, recklessness." *Id.* at 606.

Given this precedent, Taylor has plausibly alleged an Eighth Amendment claim against those who knew both that Taylor had an application for early release

from parole set for hearing and that he remained on parole afterwards.[4] Based upon the allegations, Herbert, Settle, and Serrano fall squarely within this camp. Like the defendant in *Hankins*, these defendants would have known both that Taylor's application for an early release would have to get a decision (meaning his sentence of supervised release may have expired), and that they could have easily verified whether it had (here, by checking Taylor's AMS file). Similarly, like the defendant in *Hankins*, their failure to take these simple steps for verification resulted in parole restrictions long after Taylor was meant to be released.

Defendants say "this is not *Hankins*. No defendant was subjectively aware that Plaintiff remained on parole despite the early discharge yet failed to do anything about it." [50] at 5. But *Hankins* did not hinge upon the fact that the defendant had notice that his parolee's term of supervised release expired. Quite the opposite, the court focused on the fact that the defendant knew Hankins' parole *may* have already expired, he could have easily verified if it had, and his decision not to do so resulted in additional time that Hankins remained subject to parole. *Hankins*, 786 F.3d at 605–06. Because the defendant disregarded an obvious and known risk that Hankins may have been subject to parole restrictions past the actual term of her parole, he was thereby acting with deliberate indifference. *Id.* at 606. So too here. As alleged, Herbert, Settle, and Serrano knew there was a prior petition for early termination,

---

[4] Although Plaintiff did not allege specific facts in connection with specific claims, it appears he does not assert these Eighth Amendment allegations in *Marchetti*, and any tension in the Court's treatment of Eighth Amendment claims in the two cases stems from the differences in the allegations. To the extent the allegations against Herbert here are redundant to those in *Marchetti,* they would appropriately be stricken. *See Scholz*, 18 F.4th at 952 (noting that trial courts may exercise their discretion in dismissing claims on claim splitting grounds).

which they knew *could* have been approved. By failing to take the minimal step of checking for the decision in the AMS file, they disregarded a known risk that Taylor had been released but was still under parole restrictions.

Having said this, Taylor fails to plausibly allege deliberate indifference on the part of any other defendants. He alleges no facts to suggest that Davis, Morris, Garnett, Truitt, and Gray knew both about the pending application for early release (and thus that Taylor may have been released from parole), and that Taylor was still on parole despite the possibility that he might have been released. If a defendant was unaware that Taylor was still on parole, then he/she could not have known that there was a risk of parole over-detention (and thus a constitutional violation). Similarly, if a defendant remained unaware of the application for early release, then he/she would have no reason to believe that Taylor serving out the rest of his term of parole presented a risk of a constitutional violation. Absent incriminating allegations against these defendants, the complaint fails to plausibly allege that they "ignored a *known* risk" as deliberate indifference requires. *See Figgs*, 829 F.3d at 903 (emphasis added).

The lack of facts to demonstrate deliberate indifference by the above-named group of defendants requires not only dismissal of the claims against them for their personal conduct, but also any claims against them for supervisory liability. After all, supervisory liability under § 1983 is not vicarious liability. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Merely alleging that a defendant is "atop an organizational food chain does not make a supervisor liable for a subordinate's

unconstitutional conduct." *Bostic v. Murray*, 160 F.4th 831, 841 (7th Cir. 2025). Rather, the plaintiff must show: (1) that the supervisor was personally involved in the constitutional violation; and (2) that the supervisor had the necessary state of mind. *Id.* The relevant state of mind required for Eighth Amendment claims is deliberate indifference. *Palmer v. Marion Cnty.*, 327 F.3d 588, 593 (7th Cir. 2003). Therefore, because the facts alleged against these defendants do not rise to the level of deliberate indifference, Taylor has not stated a claim against them directly or as supervisors.

### D. Fourteenth Amendment Claims

Finally, Taylor alleges that Defendants denied him procedural due process, in violation of the Fourteenth Amendment. The Fourteenth Amendment guarantees that states may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To assess a procedural due process claim, the Court follows "a two-step process," determining first "if the plaintiff has been deprived of a liberty or property interest," and, second, "if the plaintiff was provided constitutionally sufficient process." *Calderone v. City of Chicago*, 979 F.3d 1156, 1165 (7th Cir. 2020) (quoting *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 (7th Cir. 2019)) (internal quotation marks omitted). Taylor has clearly pled that he was deprived of a protected interest in liberty, as he was held in custody for an offense he did not commit and subject to parole over-detention. Thus, the central question for plausibility is whether the process to which he was subject was constitutionally sufficient.

Key to this inquiry is that Taylor does not allege that the system of parole in Illinois is itself unconstitutional, nor that his injury was due to the procedures by which that system of parole is administered. Rather, the complaint describes a "series of random and unauthorized departures from state law," *Vargas v. Cook Cnty. Sheriff's Merit Bd.*, 952 F.3d 871, 875 (7th Cir. 2020), stemming from Defendants' failure to "communicate the orders of the Prisoner Review Board," [47] at 14. When a state actor deprives an individual of a constitutionally protected interest "through a random, unauthorized act *that departs from state law*, the federal due-process guarantee requires only that the state provide an adequate post[-]deprivation remedy." *Vargas*, 952 F.3d at 875 (emphasis added). Thus, Taylor "must avail [himself] of post-deprivation remedies or demonstrate that the available remedies are inadequate." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (cleaned up).

An inadequate remedy is one that is "meaningless or nonexistent." *Michalowicz v. Vill. Of Bedford Park*, 528 F.3d 530, 535 (7th Cir. 2008). Here, Taylor has not alleged that his post-deprivation remedy is inadequate, and for good reason; he remains free to pursue a tort action with the Illinois Court of Claims for negligence or false imprisonment. *See* 705 ILCS 505/8. Such claims are sufficient post-deprivation remedies for procedural due process purposes. *See Armato v. Grounds*, 766 F.3d 713, 722 (7th Cir. 2014) (listing a suit for false imprisonment as one of "numerous sufficient remedies"); *Stewart v. McGinnis,* 5 F.3d 1031, 1036 (7th Cir. 1993) (holding that a tort claim in the Illinois Court of Claims is an adequate post-

deprivation remedy). The Court thus dismisses any Fourteenth Amendment procedural due process claim.

### E. Qualified Immunity

In addition to seeking to dismiss Plaintiff's claims based upon the sufficiency of his allegations, Defendants also move to dismiss based upon qualified immunity. Having determined above that Plaintiff may proceed only on his Eighth Amendment claim, the Court considers Defendants' qualified immunity defense only as to this claim.

The defense of "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To assess if qualified immunity applies, "the courts employ a two-prong test: (1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." *Jackson v. Anastasio*, 150 F.4th 851, 856 (7th Cir. 2025) (quoting *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)) (internal quotation marks omitted). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236.

Because Taylor has plausibly alleged that the conduct of Herbert, Settle, and Serrano violated his Eighth Amendment rights, the only remaining question is

whether those rights were clearly established at the time the conduct occurred. Rights are "clearly established when existing precedent 'has placed the statutory or constitutional question beyond debate.'" *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). This requires the plaintiff to "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997). At a minimum, "there must be settled authority that would cause [the defendant] to understand the illegality of the action." *Howell*, 853 F.3d at 897.

Once again, *Hankins* remains instructive. *Hankins* involves analogous facts and stands for the proposition that a parole officer who: (1) knows a parolee may have been released from parole; (2) fails to take basic steps to verify if that is the case; and therefore (3) causes that parolee to be subject to parole restrictions past the term of her parole is "guilty of deliberate indifference" that violates the parolee's Eighth Amendment rights. *See Hankins*, 786 F.3d at 605–606. This is the case today as it was in 2015, when *Hankins* was decided. Because the rights at issue here were clearly established, the Court declines to dismiss based upon Defendants' qualified immunity defense.

## IV. Conclusion

For the reasons explained above, the Court grants in part and denies in part Defendants' motion to dismiss, [41]. Because Taylor has failed to plausibly allege

claims for violations of the Fourth, Fifth, and Fourteenth Amendments, the Court dismisses any and all claims brought under those amendments. The Court also dismisses Taylor's Eighth Amendment claims as to Defendants Davis, Morris, Garnett, Truitt, and Gray. Taylor has, however, plausibly alleged that Herbert, Settle, and Serrano violated his Eighth Amendment rights when their deliberate indifference caused his parole over-detention, and his Eighth Amendment claims against those defendants may proceed to this extent.

Dated: September 15, 2026

Entered:

John Robert Blakey
United States District Judge